573 So.2d 37 (1990)
Jose Manuel MARTINEZ, Appellant,
v.
Patricia Dee MARTINEZ, Appellee.
No. 90-1201.
District Court of Appeal of Florida, First District.
December 19, 1990.
*39 T. Sol Johnson of Johnson, Green & Locklin, P.A., Milton, for appellant.
Michael A. Morris of Myrick & Davis, P.A., Pensacola, for appellee.
ZEHMER, Judge.
Jose Martinez and Patricia Dee Martinez were married for nine years, during which they adopted two young children. The marriage eventually ended in failure and a judgment for dissolution. Mr. Martinez now appeals that judgment, complaining of error in the entry of the following provisions:
(1) that "Mr. Martinez shall be designated as the children's interim primary residential parent";
(2) that "[t]he children shall remain at their school, Creative Learning Center, during this interim period of time";
(3) that "Mr. Martinez shall pay to Mrs. Martinez as rehabilitative alimony the sum of $2,000 per month... for a period of three years";
(4) that "[t]he Court hereby reserves jurisdiction in order to effect a partition sale of the [marital] home. The said former marital home shall be listed for sale and sold by the parties as soon as reasonably practicable";
(5) that "[i]f Mr. Martinez has a special equity in the marital home ..., it is offset by the contributions that came from Mrs. Martinez's parents"; and
(6) that "Mr. Martinez shall be responsible for the payment of Mrs. Martinez's reasonable legal fees and taxable costs incurred."
(Emphasis added.) Concluding there is error in respect to each point argued by Mr. Martinez, we reverse and remand for entry of a judgment modified in accordance with this opinion.

I. Designation of "Interim" Primary Residential Parent
In the final judgment, after reciting that "[b]oth of the parties are presently undergoing a significant lifestyle transformation," and that "it is a little bit uncertain at this time for this Court to fashion a hard and fast final decision with respect to which parent should be designated as the children's `final primary residential parent'," the circuit court ordered that "Mr. Martinez shall be designated as the children's interim primary residential parent" and noted that "[t]his ruling will hold fast and stand for a period of two years, at which time the Court will re-examine and make a decision that should be final and *40 binding." Mr. Martinez contends that since he is the person found to be the proper primary residential parent, the trial court abused its discretion in designating him an "interim" primary residential parent and requiring the parties to relitigate the custody issue in two years rather than proceeding by modification of this award based on a showing of a material change in circumstances. He points out that he cannot make any permanent plans for housing and care of the children so long as their ultimate custody is open to change without such a showing.
We agree with appellant's argument on this point. The issue of primary residential responsibility was ripe for decision when the case came on for final hearing, and it was the obligation of the court to enter a judgment determining this issue with finality, subject to subsequent modification upon a substantial change in circumstances. Section 61.13(2)(b)1, Florida Statutes (1989), provides that "[t]he court shall determine all matters relating to the custody of each minor child of the parties in accordance with the best interests of the child and in accordance with the Uniform Child Custody Jurisdiction Act." Section 61.1326, a provision of the UCCJA, provides that:
[a] custody decree rendered by a court of this state which has jurisdiction ... binds all parties who have been served in this state or notified ... or who have submitted to the jurisdiction of the court, and who have been given an opportunity to be heard. As to these parties, the custody decree is conclusive as to all issues of law and fact decided and as to the custody determination made unless and until that determination is modified pursuant to law, including the provisions of this act.
(Emphasis added.) As a general rule, when a cause is submitted to a court for determination and the court renders its judgment, "there should always be as much finality as possible ..., not only for the benefit of the parties and the court, but also for the public and any third persons who may have to look at the records for guidance in dealing with the litigants." 46 Am.Jur.2d Judgments § 379 (1969). See also Irving Trust Co. v. Kaplan, 155 Fla. 120, 20 So.2d 351, 354 (1944) (final judgment is one that determines and disposes of the whole merits of the cause before the court by declaring that the plaintiff either is or is not entitled to recover by the remedy chosen, or completely and finally disposes of a branch of the cause that may be separate and distinct from the other parts thereof). This degree of finality is necessary because "[a] litigant is entitled to know that a judgment determining his rights is final and will not be disturbed, except on appeal, or under the conditions prescribed by a rule." Board of Public Instruction v. Dinkines, 278 So.2d 663, 664 (Fla. 3d DCA 1973). Orders providing for temporary custody or temporary primary residential care are appropriate to enter while the case is pending before the entry of final judgment. See, e.g., Bowles v. Bowles, 384 So.2d 299, 300-301 (Fla. 4th DCA 1980) (non-final order awarding wife temporary custody of the children pending final dissolution proper and should not be disturbed); Blass v. Blass, 316 So.2d 308, 309 (Fla. 3d DCA 1975) (where evidence as to which parent should have permanent custody was insufficient, trial court's award of temporary custody of the children upheld and case remanded for a full evidentiary hearing de novo to determine which parent should be awarded permanent custody). However, when a cause involving child custody is presented to the trial court at the final hearing and there is evidence from which the trial court can conclude that the children's best interests dictate that one parent rather than the other should be designated the primary residential parent, the trial court is required to make a final determination on that issue at that time. Appellee cites no statutory or case authority for the proposition that the trial court can defer such decision for several years to see how the respective situations and conduct of the parents work out, as the court did in this case, and we know of no authority for that proposition.
Accordingly, we hold that the trial court abused its discretion in ruling that Mr. *41 Martinez would be the "interim primary residential parent" and requiring the parties to return before the court in two years to continue litigating this issue for the court to "make a decision that should be final and binding." The child custody issue was properly before the court at the final hearing, and both parties presented evidence on the children's best interests assuming either party were designated the primary residential parent. After hearing this evidence, the court specifically found that it was in the children's best interest that Mr. Martinez should be the primary residential parent and this finding is supported by competent substantial evidence. There was evidence that due to Mrs. Martinez's physical and emotional condition, she could not serve as the primary residential parent at this time or at any specific time in the future. There was nothing in this record precluding the court from making a final decision on custody at the time of the hearing. There was no evidence to support the court's decision to provide a two-year delay, as distinguished from some other period of time, in making that decision. This ruling thus erroneously deprived the final judgment of the statutorily-required finality. Therefore, we vacate the designation of Mr. Martinez as "interim" residential parent and remand with directions to award Mr. Martinez permanent primary residential responsibility, subject to future modification in accordance with the general law of modification upon a showing of substantial change in circumstances. See § 61.1326, Fla. Stat. (1989). See also Avery v. Avery, 314 So.2d 198 (Fla. 1st DCA 1975), opinion modified, 327 So.2d 55 (Fla. 1st DCA 1976); Brush v. Brush, 414 So.2d 37 (Fla. 3d DCA 1982); Adams v. Adams, 385 So.2d 688 (Fla. 3d DCA 1980).

II. Specification of a Particular School
The final judgment ordered that both children remain at the Creative Learning Center (CLC), where they had previously attended school, during the two-year period of time that Mr. Martinez was to serve as the "interim" primary residential parent. This requirement was based on the court's finding that "the welfare and the best interests of the children will be better served if their stability with respect to the Creative Learning Center, teachers and schoolmates, remains the same." Mr. Martinez does not object to providing private education for his children, but he contends that the court abused its discretion in ordering him to continue the children's enrollment at CLC because: (1) the primary residential parent should be permitted to choose the school that the children will attend in the absence of agreement between both parents, (2) he is financially unable to continue the children's education at that particular school, and (3) he should not be compelled to continue an unhappy relationship at the school manifested by hostility between him and the school's principal, who has been and continues to be Mrs. Martinez's paramour and a primary cause of the dissolution of the marriage. Again we agree with appellant.
Section 61.13(2)(b)2.a, Florida Statutes (1989), provides that:
[i]n ordering shared parental responsibility, the court may consider the expressed desires of the parents and may grant to one party the ultimate responsibility over specific aspects of the child's welfare or may divide those responsibilities between the parties based on the best interest of the child. Areas of responsibility may include primary residence, education, medical and dental care, and any other responsibilities which the court finds unique to a particular family.
(Emphasis added.) This statutory language contemplates that parents, not the courts, have the responsibility of determining where their children will attend school. In situations where the parents are unable to agree on the education of their children, the court is required to designate, based on the best interests of the children, one parent to have the ultimate responsibility for making decisions regarding that specific aspect of the children's welfare. See, for example, Vasquez v. Vasquez, 443 So.2d 313, 314 (Fla. 4th DCA 1983), rev. denied, 451 So.2d 851 (Fla. 1984), wherein the parents could not agree on the schooling and *42 religious training of their children, and the appellate court affirmed the trial court's order granting the husband ultimate responsibility over that aspect of the children's welfare and giving effect to the husband's decision that the children continue their Catholic education and religious training. We decline to construe section 61.13(2)(b)2.a as giving a trial court authority to direct which school the children shall attend; that section only authorizes the court to determine, based on competent substantial evidence, which parent shall make that decision based on the best interests of the children.
In this case, while neither parent has objected to providing private education for the children, they disagree on the school that the children should attend. Mrs. Martinez wants the children to remain at CLC in the interest of maintaining their stability in a familiar environment. Mr. Martinez objects to the children remaining at CLC, arguing that he is financially unable to pay the high cost of that school's tuition (contending it is the most expensive private school in Escambia County) due to other financial provisions in the final judgment, that he objects to being forced to continuously deal with his wife's paramour at the school, and that the children's education could be continued at another fine private school in the Pensacola area at a more reasonable cost. We find nothing in the evidence to suggest it is in the children's best interest that Mrs. Martinez make the choice of education rather than the primary residential parent, Mr. Martinez. There is no finding, nor any evidence to support a finding, that the children have any special needs that require them to remain at CLC. The record does not support a finding that Mr. Martinez has the financial ability to continue paying the tuition and costs for the children to attend CLC while meeting his other financial obligations contained in the final judgment of dissolution. For these reasons, we hold that the lower court erred as a matter of law in requiring Mr. Martinez to continue the children's education at the specified school. § 61.13(2)(b)2.a, Fla. Stat. (1989); Wilson v. Wilson, 559 So.2d 698, 700 (Fla. 1st DCA 1990) (private educational expenses may be awarded as part of child support payments by noncustodial parent where that parent has the ability to pay for private school and such expenses are in accordance with the family's customary standard and are in the child's best interest; but such expenses should not be ordered where it cannot be shown that the child has some special need that cannot adequately be fulfilled by public schools); Thomas v. Thomas, 377 So.2d 1009 (Fla. 3d DCA 1979) (where private school expenses were not an expense contemplated in the past nor one that the husband would be able to meet in the future because of the other financial provisions in the final judgment, a requirement that the husband supply the cost of private schooling for the parties' child was modified to read that he shall furnish private schooling only so long as it was on a gratis basis because of his prior affiliation with the private school). Additionally, in view of Mrs. Martinez's extramarital relationship with CLC's principal, we conclude that the trial court abused its discretion in not granting Mr. Martinez the ultimate responsibility of deciding which school the children should attend in the absence of any showing of special need for the children to remain at CLC that is significantly greater than the other parent's desire to preserve the status quo. See Wilson v. Wilson, supra.
Accordingly, we vacate the provision in the final judgment ordering Mr. Martinez to continue the children's education at CLC with directions that he be designated the party to make such decisions.

III. Use and Sale of the Marital Home
The final judgment reserves jurisdiction "in order to effect a partition sale of the [marital] home," and orders that the marital home "be listed for sale and sold" as soon as practicable, and "the net proceeds derived therefrom shall be equally divided." The judgment also provides that "if Mr. Martinez chooses to reside in the marital home pending sale, he may do so with the children and shall make the mortgage payments so long as he resides in the marital home."
*43 Mr. Martinez first contends that the lower court erred in not allowing the children and him to continue to reside in the marital home during the children's minority. We note that as a general rule, absent special circumstances, the primary residential parent should be awarded exclusive use and possession of the marital home until the youngest child reaches majority. In Zeller v. Zeller, 396 So.2d 1177, 1179 (Fla. 4th DCA 1981), the court correctly noted that although the failure to award exclusive possession of the marital home to the custodial parent until all of the children attain majority or become emancipated would not always constitute error, such awards are so frequently ordered that they have become a generally accepted principle of the law of divorce. See also Florence v. Florence, 400 So.2d 1018 (Fla. 1st DCA 1981) (award of exclusive use and possession of marital home until wife remarries or child reaches eighteen or otherwise becomes emancipated will satisfy the need for maintenance and support and will constitute a more equitable solution); Neustein v. Neustein, 503 So.2d 439 (Fla. 4th DCA 1987) (trial court abused its discretion when it awarded wife exclusive use of marital home only until the older child reaches eighteen; wife should have been granted exclusive use of home until she remarries or younger child reaches majority).[1]
In this case, the court made no findings that special circumstances exist which justify denying Mr. Martinez, as the primary residential parent, exclusive use and possession of the marital home until the youngest child reaches majority. The evidence proved that the children have established friends in this neighborhood. The parties concede that neither of them requested that the marital home be sold, and neither parent has shown any intention to disrupt the children's lives by moving out of this home to one in another area. Allowing Mr. Martinez to remain in the marital home until the youngest child reaches majority will serve to maintain the children's desired stability with respect to their friends, family, and surroundings.
Both Mr. and Mrs. Martinez agree that the court erred in ordering the house sold at this time because neither party agreed or requested partition of the marital home. In dissolution proceedings, the court has no authority to partition jointly-held property in the absence of the parties' agreement or a specific pleading requesting partition. Britt v. Britt, 552 So.2d 323 (Fla. 1st DCA 1989); Borntraeger v. Borntraeger, 521 So.2d 125 (Fla. 1st DCA 1987), rev. denied, 531 So.2d 1352 (Fla. 1988); Zeller v. Zeller, supra. A general prayer for equitable division of the parties' property in the petition for dissolution of marriage is not sufficient to justify partition of the parties' jointly-held property. Britt v. Britt, supra; Zeller v. Zeller, supra.
Since the pleadings did not request partition and sale of the marital home, and the evidence established no other apparent basis for denying Mr. Martinez, the primary residential parent, the exclusive use and possession of the marital home until both children reach majority, we vacate these provisions of the final judgment and remand with directions to reconsider this issue.

IV. Rehabilitative Alimony
The final judgment ordered Mr. Martinez to pay his former wife $2,000 per month for a period of three years as rehabilitative alimony. Mr. Martinez contends that she is not entitled to any rehabilitative alimony because she was unfaithful to him during the marriage, and also because she did not forsake or abandon a career for the sake of the marriage. Mr. Martinez further contends that even if Mrs. Martinez is entitled to rehabilitative alimony, the court abused *44 its discretion in awarding $2,000 per month in view of his other financial obligations under the final judgment.
We do not agree with appellant that Mrs. Martinez is not entitled to any rehabilitative alimony. In Canakaris v. Canakaris, 382 So.2d 1197, 1202 (Fla. 1980), the supreme court stated that "[t]he principal purpose of rehabilitative alimony is to establish the capacity for self-support of the receiving spouse, either through the redevelopment of previous skills or provision of the training necessary to develop potential supportive skills." In Mundy v. Mundy, 498 So.2d 538, 539 (Fla. 1st DCA 1986), this court observed that "rehabilitative alimony is appropriate only in those instances where the evidence indicates the recipient spouse has the potential or capacity to be rehabilitated `to the financial stature that would permit her to become self-supporting.'" We do not hold the view that rehabilitative alimony should be denied simply as a penalty for the wife's having engaged in an extramarital affair. In this case, there was evidence that Mrs. Martinez intended to pursue her education and would not be working full-time during the three-year period. Mrs. Martinez testified that she intended to complete her bachelor's degree, which would require an additional 21 credit hours, and thereafter pursue a master's degree. As the evidence was sufficient to support the court's finding that Mrs. Martinez has the potential or capacity to be rehabilitated so as to become self-supporting, the court did not err in awarding her rehabilitative alimony for three years.
Considering the other financial provisions of the final judgment and Mr. Martinez's monthly income and expenses, however, we conclude that the court abused its discretion in setting the amount of rehabilitative alimony at $2,000 per month. The amount of rehabilitative alimony awarded must be reasonable in terms of the recipient's need and the paying spouse's ability to pay. See Mundy v. Mundy, supra. Our review of the record discloses that the amount of this alimony award was excessive, both in view of Mrs. Martinez's needs and Mr. Martinez's ability to pay. Mrs. Martinez's financial affidavit reflects monthly expenses based on her being the primary residential parent paying all expenses for the marital home and support of the two children. Adjustment of her claimed expenses by eliminating those attributable to maintenance of the marital home and providing child support (she is not the primary residential parent, does not live in the marital home, and provides no child support under the final judgment), reveals that her monthly expenses are significantly less than the $2,000 per month allowed by the trial court. Furthermore, the record does not support a finding that Mr. Martinez has the financial ability to pay $2,000 per month alimony after providing for the child support expenses allocated to him in the final judgment. Subtracting monthly expenses for the marital home mortgage payment ($1,042),[2] the children's school tuition ($640), the cost of a full-time housekeeper and caretaker for the children ($800),[3] totaling $2,482, from Mr. Martinez's monthly net income of $4,976, leaves only $2,494 per month to cover all remaining expenses for himself, the children and his former wife's monthly alimony award of $2,000. We conclude that the amount of the rehabilitative alimony award was clearly excessive in light of Mrs. Martinez's demonstrated needs and Mr. Martinez's ability to pay. See Kaylor v. Kaylor, 413 So.2d 870, 871 (Fla. 2d DCA 1982) (trial court's award of rehabilitative alimony excessive as it erroneously took husband from a position of financial well-being to financial misfortune where the award, in light of other provisions of final judgment, exceeded husband's ability to pay); Parham v. Parham, 385 So.2d 107, 109 (Fla. 3d DCA 1980) (appellate court will not hesitate *45 to overturn an alimony award that exceeds husband's ability to pay).
We vacate the amount of the rehabilitative alimony award and remand for a redetermination of a reasonable amount based on a more reasonable and realistic view of Mrs. Martinez's needs and Mr. Martinez's ability to pay.

V. The Special Equity Issue
The final judgment effectively denied Mr. Martinez any financial benefit from his special equity in the marital home jointly owned as tenants by the entireties. It recites that "[i]f Mr. Martinez has a special equity in the marital home ..., it is offset by the contributions that came from Mrs. Martinez's parents." Mr. Martinez contends that he established a special equity based on his contribution of $23,000 towards the purchase of the marital home out of funds received from the sale of a condominium that he owned prior to the marriage. He argues that the trial court erred in offsetting against that special equity a $25,000 gift from Mrs. Martinez's parents to his former wife, because that gift was made to both of them and a gift to both parties jointly cannot constitute an offset against one party's special equity. Mrs. Martinez concedes that Mr. Martinez has a special equity in the marital home, but contends that his claim is properly offset by the $25,000 gift, claiming that her parents gave it to her alone as a contribution towards the purchase price of the marital home.
There is no question that Mr. Martinez's $23,000 contribution from the sale of his condominium towards the purchase price of the marital home entitles him to a special equity in the jointly-owned marital home. Landay v. Landay, 429 So.2d 1197, 1200 (Fla. 1983) (wife who paid entire down payment on the marital home from her separate funds accumulated by her before her marriage had a special equity in the marital home); Dewey v. Dewey, 436 So.2d 283 (Fla. 5th DCA 1983) (husband who sold his separately-owned house and a commercial building and applied the money to the purchase of the jointly-owned marital home entitled to a special equity in the marital home). However, the record does not support the trial court's finding that Mr. Martinez's special equity should be offset by the $25,000 gift from Mrs. Martinez's parents. Although Mrs. Martinez's father initially testified that he intended to make a gift to his daughter alone, the testimony and documentary evidence presented at the final hearing showed without dispute that the gift was made to both Mr. and Mrs. Martinez. The original note executed in favor of Mrs. Martinez's father was jointly signed by both Mr. and Mrs. Martinez. Mrs. Martinez's father sent a letter of forgiveness of this debt addressed to both Mr. and Mrs. Martinez and forgave them both of any liability on the debt. Although Mrs. Martinez's father initially testified that "I gave them $25,000 and took a note back from her for $12,500" (emphasis added), on cross-examination he corrected his previous testimony when confronted with the documentary evidence, and thereafter he testified that he required both Mr. and Mrs. Martinez to sign the $25,000 note and that he forgave them both in the letter of forgiveness. Therefore, we find no competent substantial evidence that this gift created a special equity in Mrs. Martinez, and under the applicable law hereafter discussed, this gift could not serve to offset Mr. Martinez's special equity in the marital home.
It is well established that where a party outside of the marriage makes a loan to the husband and wife jointly, neither of them is entitled to a special equity based on that gift. See McCarthy v. McCarthy, 528 So.2d 97 (Fla. 2d DCA 1988) (trial court abused its discretion in finding a special equity in favor of the wife based on a loan the wife's mother made to the couple jointly); Howard v. Howard, 310 So.2d 430 (Fla. 4th DCA 1975) (if the trial court determines that the loan from the wife's parents was made to the parties jointly, then the prayer for a special equity should be denied). In a case involving facts quite similar to this case, Portuondo v. Portuondo, 570 So.2d 1338 (Fla. 3d DCA 1990), the husband's father forgave a mortgage owed to him by his son and daughter-in-law on their home. *46 The husband and wife subsequently sold the house and placed the funds resulting from the sale in an escrow account. At the dissolution hearing, the trial court granted the husband a special equity in this account based on his father's testimony that he intended to make a gift of the entire amount of the mortgage solely to his son. The appellate court reversed, stating:
However, the evidence reveals that the parties held title to the Island Drive home as tenants by the entireties. Both the husband and the wife were legally obligated under the mortgage and note, and any forgiveness thereof flowed equally to both parties. In addition, the testimony of the husband's father itself undercuts the finding of a gift to the husband alone. The husband's father testified that he forgave the entire mortgage obligation over the course of four years.
at 1340. The court also observed that the record revealed the father's intent was to make a tax-free gift by forgiving the mortgage over four years, which, due to the amount of the mortgage and note and restrictions on gift taxes under the Internal Revenue Code, would require that the gift be made to both the husband and the wife. The court held that there was no competent evidence in the record to support the trial court's finding of a special equity in the husband. Id.
Likewise, as there is no evidence in the record now before us which supports a finding that the wife held a special equity in the marital home by reason of the $25,000 gift from her father, we vacate the ruling in the final judgment offsetting that gift against Mr. Martinez's special equity in the home.

VI. The Attorney's Fee Issue.
The final judgment ordered Mr. Martinez to pay all of Mrs. Martinez's attorney's fees. Mr. Martinez contends that the trial judge abused his discretion in ordering him to pay Mrs. Martinez's attorney's fees, arguing that after the assets are divided, the parties are in a nearly equal financial position with equal ability to pay their own attorney's fees, and therefore, that it is error to diminish his distributive share by requiring him to pay the wife's attorney's fees.
Section 61.16, Florida Statutes (1989), provides that:
[t]he trial court may from time to time, after considering the financial resources of both parties, order a party to pay a reasonable amount for attorney's fees, suit money, and the cost to the other party of maintaining or defending any proceeding under this chapter... .
In McIntyre v. McIntyre, 434 So.2d 61, 62 (Fla. 5th DCA 1983), the court held that after making a truly equitable distribution of marital assets, it is inequitable to diminish the assets awarded to either party by requiring one to pay the other's litigation costs where each party has substantially equal ability to pay their own costs and expenses after such distribution.
In this case, the parties concede that the final judgment made a nearly equal distribution of the parties' assets, and our review of the judgment and the record on appeal confirms this fact.[4] It appears, however, that after the distribution of assets and the allocation of Mr. Martinez's monthly income in accordance with final judgment, Mr. Martinez is in no better position than Mrs. Martinez to pay her attorney's fees. The balance remaining in Mr. Martinez's bank account was approximately $1,600 as of July 1989 and, as discussed above, his monthly income remaining after payment of his monthly expenses is barely sufficient to support the children and himself. The trial court has previously ordered Mr. Martinez to pay approximately $8,400 in temporary attorney's fees to Mrs. Martinez's attorney, which forced Mr. Martinez to liquidate non-marital assets in order to pay the fee. Mrs. Martinez's attorney claims an additional $15,000 in fees is now due. Realistically, the only remaining source for payment of *47 these additional fees is both parties' equity in the marital home after it has been sold or from the liquidation of the distributed property. Mrs. Martinez has a substantial amount of jewelry that could be liquidated to pay these fees as easily as any of the other assets of the parties.
Since there is no showing on this record that Mr. Martinez is more capable than Mrs. Martinez of paying her attorney's fees under the final judgment, the court abused its discretion in ordering him to pay all of his former wife's attorney's fees. See Cummings v. Cummings, 330 So.2d 134 (Fla. 1976) (where parties to a dissolution proceeding are equally able to pay attorneys' fees, it is an abuse of the court's discretion to require one spouse to pay the other's attorney's fees); Rhoden v. Rhoden, 538 So.2d 1274 (Fla. 1st DCA 1988), on motion to enforce mandate, 569 So.2d 1299 (Fla. 1st DCA 1990) (where the record did not reflect that either party had substantially greater need, ability to pay, or liquid assets at the time of the final hearing, the trial court's ruling requiring both parties to pay their own fees affirmed). We recognize that Mr. Martinez has a substantial income, well in excess of his former wife's, but that income is not sufficient to cover the alimony and living expenses required to be paid by the husband under the final judgment plus attorney's fees for both the former wife and himself.
Accordingly, the provision of the final judgment requiring Mr. Martinez to pay Mrs. Martinez's attorney's fees is vacated. Since this cause must be remanded for further proceedings and entry of a modified judgment, the trial court, after settling upon a restructured division of assets and allocation of monthly income, should reconsider the matter of attorney's fees.
REVERSED AND REMANDED.
SHIVERS, C.J., concurs.
JOANOS, J., concurs and dissents with written opinion.
JOANOS, Judge, concurring and dissenting.
I concur specially in some of the results reached by the majority opinion. Under the circumstances of this case, it was error to establish an interim residency for the children. The issue of custody was ripe and a decision permanent in nature, except as to future modification according to law, should have been made. Because it was a part of the interim arrangement, the requirement that the children remain at a particular school was likewise in error. It was also error, under the circumstances, to order sale or partition of the house because neither party had requested it, and it was not necessary to accomplish any other reasonable purpose.
I dissent from the other determinations reached in the majority opinion as to the rehabilitative alimony, the equities in regard to the ownership of the marital home, and the award of attorney's fees. The awards made by the trial judge on these points were well within the discretion afforded him under the law of our state.
NOTES
[1] But cf. Schein v. Schein, 448 So.2d 16 (Fla. 3d DCA 1984) (absent finding of duty on the wife's part to support the children, the trial court erred in awarding husband, who had custody of children, rent-free exclusive possession of marital home); Kuvin v. Kuvin, 442 So.2d 203 (Fla. 1983) (trial court did not err in failing to award marital home to custodial parent where $20,000 awarded to custodial parent from the other parent's share of proceeds of the ordered sale of home plus custodial parent's share would permit custodial parent to find suitable housing for herself and children).
[2] There is no evidence that the monthly mortgage payment of $1,042 is excessive.
[3] Prior to the dissolution of their marriage and while Mrs. Martinez had temporary custody of the children pending final hearing, Mrs. Martinez was unemployed but nevertheless hired a full-time housekeeper and caretaker for the children. Mrs. Martinez does not contend that $800 per month for those services is excessive.
[4] Omitting the marital home which continues to be jointly owned, the approximate value of the assets distributed to Mr. Martinez was $58,000 and the approximate value of the assets distributed to Mrs. Martinez was $62,000.