# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-5223

_____

DARLENE S. HORTON, Former
Wife,

    Appellant/Cross-Appellee,

    v.

JOHN D. HORTON, Former
Husband,

    Appellee/Cross-Appellant.

_____


On appeal from the Circuit Court for Escambia County.
Jennie Kinsey, Judge.


November 6, 2018


PER CURIAM.

Approaching three years after John Horton (the husband) filed a petition for dissolution against Darlene Horton (the wife), final judgment was entered. The wife appealed as to the timesharing schedule implemented as to the parties' adopted son. The husband cross-appealed, asserting several errors concerning distribution of assets and alimony. We address all issues requiring discussion, and find several that compel reversal.[1]

_____

[1] We affirm as to the husband's argument that the trial court erred by failing to make factual findings supporting the award of attorney's fees because his motion for rehearing failed to raise

## I. Timesharing Schedule

A significant portion of the testimony related to the relationship between the parties' and their son, and what kind of timesharing schedule would be in his best interests. All evidence indicated an extremely strong bond between the wife and son, and a strained relationship between the husband and son. During the years of contentious litigation, the parties continued to live in the same house and the husband's relationship with the son deteriorated significantly. No evidence showed improper behavior by the husband, and all indications were that this deterioration was due to the animosity between the parties, uncomfortable living situation, and strong bond between the wife and son. The husband requested 50/50 timesharing; the wife wanted more.

The trial court believed that the son should repair his relationship with the husband, which could occur with counseling and a graduated timesharing schedule. A three-step schedule was found to be appropriate, beginning with the son spending approximately one to three days per week with the husband, and concluding, after one year, with the parties rotating timesharing on a weekly basis.

The wife argues that this graduated plan is not based on the son's current best interests, but is impermissibly prospective. In *Preudhomme v. Preudhomme*, 245 So. 3d 989, 989-90 (Fla. 1st DCA 2018), the trial court ordered the parties to continue their weekly timesharing rotation for twenty months, at which time the father would attain majority timesharing so the child could begin kindergarten. We concluded that this prospective-based approach to timesharing was prohibited, and the best interests of the child must be determined in the present. *Id.* at 990. Because the trial court did not discuss the son's current best interests, *see* section 61.13(3), Florida Statutes, it is unclear whether or not it would have found the first phase of the schedule to be in his best interests. Therefore, we reverse the timesharing schedule in sum.

---

this argument. *See Burkett v. Burkett*, 155 So. 3d 478 (Fla. 1st DCA 2015).

## II. Benefits and Income

The husband and wife agreed that the wife receives monthly income of approximately $937 from social security for being a non-working spouse, $937 from social security for having a minor child, and $350 from the state of Florida for having an adopted child. The parties did not agree as to which payments would be divided or how. The final judgment ordered that, beginning at the point when timesharing would be evenly split between the two parties, social security and adoption monies would also be evenly split. As we reversed the timesharing plan, we likewise reverse this provision premised on that plan.

## III. 401(k) Distribution

The husband's 401(k) plan was worth approximately $252,800 at the time of the petition for dissolution, but at the time of trial was worth under $201,400. The husband argued that this marital asset should be divided based on its worth as of the time of the trial, while the wife found the date of the petition to be the applicable date. At trial, the trial court correctly found that the plan's worth as of the date of the trial controlled based on the uncontroverted evidence that the husband used all of the funds that had been distributed to pay all of the household bills, as well as to otherwise support the wife and son. *See Ballard v. Ballard*, 158 So. 3d 641, 642–43 (Fla. 1st DCA 2014) ("Sums that have been diminished during dissolution proceedings for purposes reasonably related to the marriage . . . should not be included in an equitable distribution scheme unless there is evidence that one spouse intentionally dissipated the asset for his or her own benefit and for a purpose unrelated to the marriage.").

Seven months after the trial, the parties' attorneys reconvened to discuss a proposed final judgment. The husband's counsel asserted that the 401(k) plan was still being used to support the household, and the $201,400 figure should be further adjusted downward; the wife objected to any adjustments. The final judgment, entered approximately two months after this hearing, valued the plan at its worth near $201,400 at the time of the trial.

3

The husband argues that dividing the plan based on its worth at the time of trial is inequitable because the funds were continuously used to support the household post-trial. The trial court must determine a valuation for marital assets that is just and equitable, and this determination is reviewed for abuse of discretion. *See Schroll v. Schroll*, 227 So. 3d 232, 235 (Fla. 1st DCA 2017); *Leonardis v. Leonardis*, 30 So. 3d 568, 571 (Fla. 4th DCA 2010). The husband relies on *Leonardis*, where the trial court valued the marital house as of the date of the filing of the petition, declined to take into account the decline in property value at the time of the hearing, and used this figure as the anticipated sale price, although the house did not need to be sold until the youngest of the parties' three children reached the age of eighteen. 30 So. 3d at 570. Reliance on *Leonardis* is mistaken for two reasons: 1) here, the asset was valued at the time of the final hearing rather than the filing of the petition, and 2) the 401(k) plan has an identifiable value capable of division, and does not involve speculation. The husband has not shown that the trial court was required to amend the evidence post-trial, and we do not find that the trial court abused its discretion.[2]

## IV. Alimony

The wife requested sixteen years of durational alimony based on her age, standard of living, health issues, and limited assets. The husband argued that the wife should not be awarded alimony because he and his wife would receive comparable incomes following division of the 401(k) plan. The final judgment

---

[2] We note the lengthy delay between trial and final judgment, and the potential consequences of such a delay. *See McGoldrick v. McGoldrick*, 940 So. 2d 1275, 1276 (Fla. 2d DCA 2006) (reversing due to the eight-month delay and numerous errors); *McCartney v. McCartney*, 725 So. 2d 1201, 1202 (Fla. 2d DCA 1999) (finding the delays "unacceptable" but denying reversal on this basis). We do not find that the delay here requires reversal because the parties did not address who or what caused it, the wife objected to the argument that the plan should be adjusted, and the husband did not move to admit new evidence.

4

awarded $1,000 of alimony monthly for sixteen years, noting that the trial court had "considered section 61.08, Florida Statutes, in determining whether an alimony award was appropriate," and considered the length of the marriage and age of the parties.

In determining whether to award alimony, the trial court must "make a specific factual determination as to whether either party has an actual need for alimony or maintenance and whether either party has the ability to pay alimony or maintenance," and, if an award is appropriate, must consider several factors to determine the proper type and amount. § 61.08(2), Fla. Stat. Failure to do so "precludes meaningful appellate review." *Abbott v. Abbott*, 187 So. 3d 326, 328 (Fla. 1st DCA 2016). The husband argues, and the wife concedes, that the alimony award does not include sufficient factual findings. We agree and, because this issue was preserved in a motion for rehearing, reverse the award of alimony.

V. Conclusion

We AFFIRM the division of the 401(k) plan and award of attorney's fees; REVERSE the timesharing schedule, division of social security and benefit funds, and alimony award; and REMAND for proceedings consistent with this opinion.

WINOKUR and JAY, JJ., concur; BILBREY, J., concurs with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

BILBREY, J., concurring.

I join in the majority opinion and write only to address the timesharing issue in the parenting plan. The graduated, stepped-up timesharing schedule was a reasonable attempt by the circuit judge to restore the strained relationship between the

father and son.[3]  Unfortunately, this reasonable approach to restoring the relationship was precluded by the cases which interpret section 61.13, Florida Statutes.  Courts have repeatedly held that the "best interest of the child" is a present, not prospective, determination.  *See Arthur v. Arthur*, 54 So. 3d 454 (Fla. 2010); *Preudhomme v. Preudhomme*, 245 So. 3d 989 (Fla. 1st DCA 2018); *Horn v. Horn*, 225 So. 3d 292 (Fla. 1st DCA 2017); *Janousek v. Janousek*, 616 So. 2d 131 (Fla. 1st DCA 1993); *Martinez v. Martinez*, 573 So. 2d 37 (Fla. 1st DCA 1990).

I recognize that "a trial court is not equipped with a 'crystal ball' that enables it to prophetically determine whether future" changes are in the best interest of the child.  *Arthur*, 54 So. 3d at 459.  But many of the decisions circuit judges have to make in family law cases do not involve scrying, augury, or anything ending with the suffix mancy.  Rather these decisions involve reasonable, evidence-based anticipation or prospective determination of likely future events.

For instance, in awarding bridge-the-gap alimony the circuit judge is anticipating what support will be necessary "to allow the party to make a transition from being married to being single." § 61.08(5), Fla. Stat.  In awarding rehabilitative alimony, a circuit judge is anticipating the development of future skills necessary for the former spouse receiving that alimony to establish "the capacity for self-support."  § 61.08(6)(a), Fla. Stat.

Even some of the numerous factors a circuit judge must consider in "establishing or modifying parental responsibility and creating, developing, approving, or modifying a parenting plan, including a time-sharing schedule" require a prospective determination.  § 61.13(3), Fla. Stat.  "The anticipated division of parental responsibilities after the litigation" clearly requires a prospective determination.  § 61.13(3)(b).  The "desirability of

---

[3] The minor child was apparently aware of being adopted.  According to the attorney guardian ad litem's testimony, the father and son had a grandparent/grandchild relationship.  The stepped-up timesharing was meant to strengthen the relationship and facilitate the development of a parent/child relationship.

maintaining continuity" of the child's current environment is a prospective determination. § 61.13(3)(d). And for many factors, the "demonstrated capacity" of a parent presupposes a "disposition" in the future to continue acting in accordance with past behaviors. § 61.13(3)(a), (c), (j), (k), (p), (q), (r) & (s).

Here, the circuit judge reasonably anticipated that the graduated time-sharing plan she put in place would help build the relationship. But even when future events are almost sure to occur, our case law based on Florida Supreme Court precedent prohibits a prospective determination. *See Preudhomme*, 245 So. 3d at 990 (relying on *Arthur*, among other cases, in holding that a timesharing schedule which set forth what was to happen when the child started kindergarten in 20 months was impermissible).

The end result of the prohibition on any prospective determination of parenting is that in many cases the parties end up back in court seeking to modify the parenting plan or time-sharing. *See* § 61.13(2)(c) & (3). Since the parenting and time-sharing impacts the amount of child support, financial information has to again be disclosed. *See* 61.30(11)(b), Fla. Stat; Florida Family Law Form 12.905(a). As was shown here, crowded court dockets, discovery, and counsels' schedule means that family law litigation can take many months or years.

Furthermore, the burden imposed on the parent moving for modification is high. The "modification of a parenting plan and time-sharing schedule requires a showing of a substantial, material, and unanticipated change of circumstances." § 61.13(2)(c); *see also* § 61.13(3). This potentially puts the party seeking modification in a situation without a remedy. Is it unanticipated here that the father will strengthen his parental bonds and want more time-sharing with his child? Was it unanticipated in *Preudhomme* that the parents' and child's schedule would need to be adjusted upon the child starting kindergarten?

The Legislature requires a circuit judge determining parental responsibility and time-sharing to reasonably consider numerous likely future events. Barring a tragedy, all children will continue to age and develop. But under the current case law

7

a circuit judge cannot consider a future event that is very likely to occur. Perhaps the Legislature should consider allowing reasonable, limited, prospective modifications to be included in determining parental responsibility and time-sharing so that a party and the court are spared modification for such an event.

_____

Jill W. Warren, Pensacola, for Appellant/Cross-Appellee.

James M. Burns of the Law Offices of James M. Burns, P.A., Pensacola, for Appellee/Cross-Appellant.